brp - peterfranklin lease 01/28/98

I CERTIFY THIS TO BE A
TRUE AND CORRECT COPY.

## RETAIL LEASE

**(PARTIES)**

AGREEMENT made this _14th_ day of _February_ , 1998, between **BASIN ROAD PLAZA ASSOCIATES**, hereinafter called OWNER, having an address of P.O. Box 4187, Greenville, DE 19807 and **PETER FRANKLIN ,INC.**, hereinafter called TENANT, having an address of 1119 Webster Drive, Wilmington, DE 19803.

**(PREMISES)**

WITNESSETH, that OWNER has leased to Tenant and Tenant has leased from Owner, all those certain premises containing 2,000 square feet of aggregate rentable area comprising part of a shopping center known as Basin Road Plaza, located in the State of Delaware and County of New Castle ("Premises"). **The** mailing address for the Premises is 509 Basin Road, Basin Road Plaza, New Castle, Delaware 19720. The terms and conditions of this Lease are:

**(TERM, RENT & OPTIONS, LATE RENT)**

1. (a) The term of this Lease is five (5) years, beginning on the 1st day of March, 1998, and ending on the 28th day of February, 2003. During said term, Tenant shall pay rent of Sixteen Thousand Dollars ($16,000.00) per year in equal advance payments of One Thousand Three Hundred Thirty-three Dollars and 33/100 ($1,333.33) per month.

   (b) Tenant shall have the option to renew the Lease for three (3) additional terms of five (5) years by providing Owner one hundred eighty (180) days advance written notice of Tenant's such intent to renew. **During the** exercised renewal options, Tenant shall pay rent as follows:

   _3/1/98 — 2/28/03  $16,000/yr  1333.33_

| 03/01/03 - 02/28/08 | $20,000/year | ($1,666.67/month) | ($10.00/sf/yr.) |
| 03/10/08 - 02/28/13 | $24,000/year | ($2,000.00/month) | ($12.00/sf/yr.) |
| 03/01/13 - 02/28/18 | $28,800/year | ($2,400.00/month) | ($14.40/sf/yr.) |

   (c) Tenant shall pay a late charge of five percent (5%) of any installment not received by Owner within ten (10) days after the installment is due.

**(USES)**

2. (a) Tenant may use and occupy said Premises as a laundromat and dry cleaning drop store, and for no other purpose, except with the prior written consent of Owner.

   (b) Tenant shall comply with all applicable City, County and State laws, ordinances and regulations, and with the rules or regulations of the local Board of Underwriters with respect to use and occupancy of said Premises. Tenant shall not permit the conduct of any business, trade or occupation on said Premises, or anything to be done thereon which may void or make voidable any policy of insurance held by Owner thereon. **If anything shall be done or kept or** omitted to be done in, upon or about the Premises which shall cause any extra premiums for or increase the rate of any such insurance, Tenant will pay the increased cost of the same to Owner, upon demand.

- 1 -

_EXHIBIT_

brp - peterfranklin lease 01/28/98

(c)  Tenant agrees to:  (i) keep that part of the Premises which it occupies clean and sanitary; (ii) dispose from the Premises all rubbish, garbage and other organic or flammable waste in a clean and sanitary manner; (iii) keep all plumbing fixtures clean and sanitary; (iv) properly use and operate all electrical and plumbing fixtures; and, (v) insure that no person on the Premises with Tenant's permission willfully or wantonly destroys, defaces, damages, impairs or removes any part of the structure, the Premises or the facilities, **equipment or appurtenances thereto, nor itself to do any such thing.  Tenant** agrees that during the term of this Lease the Premises will be kept open for business during the regular business hours of the Entire Premises; no auction, fire, bankruptcy, going out of business or similar sale will be conducted, or be advertised as being conducted, in the Premises without the written consent of Owner; no merchandise will be displayed outside the Premises; no nuisance will be permitted on or about the Premises; nothing shall be done upon or about the Premises, which shall be unlawful, improper, noisy or offensive, or contrary to any law, ordinance, regulation or requirement of any public authority or insurance inspection or rating bureau or similar organization having jurisdiction, or which may be injurious to or adversely affect the quality or tone of the Premises or the Entire Premises; the Premises will not be overloaded, damaged or defaced; Tenant will not drill or make any holes in the stone or brickwork; Tenant will not permit the emission of any objectionable noise or odor from the Premises; Tenant will procure all licenses and permits which may be required for any use made of the Premises; The Premises and the show windows and signs thereof will be kept lighted during such times as Owner shall prescribe for such lighting by rules and regulations; all merchandise and ~~other property will be delivered to and/or removed from the Premises, and all~~ waste and refuse will be removed from the Premises in accordance with the rules and regulations therefore as shall be prescribed by Owner.  **Tenant will** cooperate with Owner and with other tenants of the Entire Premises in promotional and advertising campaigns and to that end, Tenant will become and remain a member of any Merchant's Association of which fifty percent or more of the tenants of the Entire Premises shall be members.


(COMMON AREAS)

(d)  The "common area" shall be the parking areas, malls, driveways, walks, entrances, exits, and services areas and service roads from time to time designated as such by Owner.  **Tenant will keep walks adjacent to the Premises** reasonably free of snow, refuse and obstructions.

(e)  Tenant, subtenants and concessionaires of Tenant, and employees, agents, contractors and customers of Tenant or its subtenants or concessionaires shall have the right to use in common with and with due regard for the rights of others entitled to use the same, the common areas for all such purposes as said various common areas shall be designated by Owner, but only in connection with business upon the Entire Premises.  Owner reserves the right at any time and from time to time to change the location or size of any of the common areas.


(DELAY IN POSSESSION)

3.  Tenant agrees that in the event of the inability of Owner to deliver possession of the Premises at the commencement of the lease term for any reason whatsoever, Owner shall not be liable for any damage caused thereby, nor shall this Lease be void or voidable, but Tenant as its sole remedy shall not be

brp - peterfranklin lease 01/28/98

liable for any rent until such time as Owner can and does offer to deliver
possession of the Premises to Tenant and the total rent payable to Owner and the
commencement date of this lease term shall both be adjusted accordingly.  **The**
commencement of the lease term shall be stated in writing, signed by Owner and
Tenant, and shall become a part of this Lease.

(ADDITIONAL RENT, FAILURE TO FURNISH SERVICES)

4.  (a)   The parties agree that each shall, subject to the further provisions
hereof, furnish and pay for the services and items assigned to them below, in
addition to the other considerations recited herein and that any tenant's
charges shall be considered additional rent for all purposes under this
Agreement and Delaware law:

    (1)  Heat as required and equipment repairs......................Tenant
    (2)  Air conditioning as required and equipment repairs.........Tenant
    (3)  Electricity as required ...................................Tenant
    (4)  Water rent charges........................................Tenant
    (5)  Sewer charges (proportionate share)......................Tenant
    (6)  Clearing of ice and snow from Tenant's sidewalks;
         sanding and/or salting...................................Tenant
    (7)  Janitor and cleaning services............................Tenant
    (8)  Window washing...........................................Tenant
    (9)  Ordinary repairs and maintenance, interior................Tenant
    (10) Ordinary repairs and maintenance,
         exterior.................................................Owner
    (11) Structural repairs.......................................Owner
    (12) Parking lot maintenance, including plowing, etc., when
         necessary (proportionate share)..........................Tenant
    (13) Common area maintenance (proportionate share).............Tenant
    (14) Building insurance (proportionate share)..................Tenant
    (15) Glass....................................................Tenant

    (b)   Owner shall not be liable for any failure to furnish the services and
items assigned to it above if such failure is due to a shortage of materials,
supplies, labor, services or other causes beyond its control, including delays
in the collection of insurance proceeds or awards.  Furthermore, Owner reserves
the right to interrupt, curtail, or suspend the services required to be
furnished by Owner under this Section when the necessity therefore arises by
reason of accident, emergency, mechanical breakdown, or when required by any
law, order or regulation of any federal, state, county or municipal authority,
or for any other cause beyond the reasonable control of Owner.  **Owner shall use**
due diligence to complete all repairs required by Owner hereunder of other
necessary work as quickly as possible so that Tenant's inconvenience resulting
therefrom may be for as short a period of time as circumstances will permit.  No
diminution or abatement of rent or other compensation shall or will be claimed
by Tenant as a result therefrom, nor shall this Lease or any of the obligations
of Tenant hereunder be affected or reduced by reason of such interruption,
curtailment or suspension, as long as the duration of the interruption,
curtailment or suspension is reasonable.

brp - peterfranklin lease 01/28/98

(SUBLEASE, ASSIGNMENT)

5. (a)  Tenant shall not sublet, assign, transfer or in any manner dispose of
the said Premises or any part thereof, for all or any part of the term hereby
granted, without the written consent of Owner, which consent shall not be
unreasonably withheld.  If Tenant merges into, or consolidated with, or
liquidates or sells, transfers or pledges all or a substantial part of its
assets or stock to any person, corporation or organization of any kind, such
action shall constitute an assignment or transfer of the Premises within the
meaning of this Lease.

(ABSENCES)

(b)  Tenant shall notify Owner of any anticipated extended absence from the
Premises and agrees to indemnify Owner for any harm or damage resulting from
such absence.

(SURRENDER)

6. Tenant shall surrender the said Premises to Owner at the termination of this
Lease in a condition at least equal to that which it was at the beginning of the
term, reasonable wear and tear excepted.

(IMPROVEMENTS)

7. (a)  Tenant shall not make any alternations, additions or improvements to
the Premises without the prior written consent of Owner or change the character
or nature of the Premises without such prior written consent.  **Tenant agrees**
that it shall not be a defense to a civil action by Owner for a breach of this
covenant that the alteration, addition or improvement has not reduced the market
value of the Premises or of Owner's property or that the change is one which a
prudent Owner would be likely to make in view of the conditions existing on or
in the neighborhood of the affected property.  **Tenant agrees that a court of**
equity, upon a proper showing, can issue an injunction against Tenant should it
contemplate any such alteration, addition or improvement.  In no event shall any
structural change or any change or modification be made to the structure,
heating, electrical or plumbing services by Tenant or any employee or agent of
Tenant.  Any approved alternation, addition or improvement shall be done in
accordance with the applicable laws and ordinances of any public authority
having jurisdiction over the buildings of which the leased Premises are a part
and in accordance with the building and zoning rules and regulations of any such
authority.  **Tenant hereby expressly assumes full responsibility for all damages**
and for injuries which may result to any person or property by reason of, or
resulting from said alterations, addition or improvement and shall hold Owner
harmless with respect thereto.  In making any approved alteration, addition or
improvement, Tenant shall promptly pay all contractors, materialmen and laborers
so as to minimize the possibility of a lien attaching to the building of which
the leased Premises are a part, or attaching to any portion of the real property
on which said building is located, and should any such lien be made or filed,
Tenant shall bond against or discharge the same within ten (10) days after
written request by Owner.

(b)  All alterations, improvements, additions or fixtures, whether installed
before or after the execution of this Lease, shall remain upon the Premises at

brp - peterfranklin lease 01/28/98

the expiration or termination of this Lease and shall become the property of
Owner, unless Owner shall, prior to the termination of this Lease, have given
written notice to Tenant to remove the same, in which event Tenant will remove
such alterations, improvements and/or additions and restore the Premises in the
same good order and condition in which they were prior to the installation of
such alterations, improvements, additions or fixtures.  Should Tenant fail to do
so, Owner may do so, collection at Owner's option, the cost and expenses thereof
from Tenant as additional rent.

(REPAIRS)

    (c)  Tenant, shall at its expense, make such repairs and replacements to the
Premises and the fixtures and appurtenances therein necessitated by the neglect
or misuse of Tenant, or its agents, servants, visitors or licenses, or by the
use of the Premises in a manner contrary to the purposes for which the same are
leased to Tenant, as and when needed to preserve them in good working order and
condition.  All damages or injury to the Premises and to its fixtures,
appurtenances or equipment caused by Tenant moving property in or out of the
Building, or by installation or removal of furniture, fixtures or other
property, shall be repaired, restored, or replaced promptly by Tenant at its
sole cost and expense which repairs restorations and replacements shall be in
quality and class equal to the original work or installations.

    (d)  Owner shall, at its expense, make all repairs and replacements,
structural or otherwise, necessary to keep in good order and repair, the
Premises, including Owner's equipment, except for repair of Tenant's trade
fixtures, property or installations not occasioned by Owner's intentional and
wrongful acts and except for repairs and replacements which Tenant is obligated
to make pursuant to the provisions of this Lease.

    (e)  Any defective condition of the Premises which comes to the Tenant's
attention, which it has reason to believe is unknown to Owner, and which it has
reason to believe is the duty of Owner, of Tenant, or of another tenant, to
repair, shall be reported in writing by Tenant to Owner as soon as practicable.
Tenant responsible for any liability or injury resulting to Owner as a result of
Tenant's failure to so report.

    (f)  A Tenant on whom a complaint in ejectment or an action in rem is served
shall immediately notify Owner.

(RELEASE OF LIABILITY)

    8.  Unless any of the same shall be caused by Owner's negligent, intentional or
wrongful acts or that of its agents, servants or employees, Owner shall not be
liable for and Tenant hereby releases Owner and Owner's agent, servants and
employees from all claims for any damage or injury to Tenant or any agent or
employee of Tenant, or to any person or persons coming upon the said Premises in
connection with the occupancy of Tenant or otherwise, or to any goods, chattels,
business or other property of Tenant, or any other person or persons which may,
during the term of this Lease be located in said Premises, caused or contributed
to by fire, accident or occurrence or conditions in or upon the Premises or the
building, including but not limited to, such claims for damages resulting from
water, rain, snow, breakage of pipes, leakage or by any other cause.

brp - peterfranklin lease 01/28/98

(ENTRY)

9. Owner and persons designated by it have the right to enter the said Premises at reasonable hours to examine the same and to do such work as Owner is obligated to do under the terms hereof or to do such work as Owner shall deem necessary for the safety or preservation of the said Premises; provided, however, that the same shall not interfere unreasonably with the conduct of Tenant's business.

(INTERRUPTION)

10. In the event the said Premises are totally destroyed by fire or other casualty or are damaged to such an extent that Owner, at its sole option, determines to raze or remodel the building or buildings located thereon, then the term hereby created shall end on the date of such dire or casualty and tenant shall pay the rent apportioned to the time of such fire or casualty and shall surrender possession of said Premises. **If, however, the said Premises**, in the judgement of Owner, can be repaired with reasonable promptness so as to be in good condition as they are at the beginning of the term, the Lease and the term herein created shall not be affected except that the rent shall be apportioned or suspended while such repairs are being made. **If, however, the** said Premises are slightly damaged by fire, accident or other casualty and are not thereby rendered unfit for occupancy then the same shall be repaired by Owner with reasonable promptness, and no abatement or apportionment of the rent shall be made.

(INSURANCE)

11. (a)  Tenant shall, at its sole cost and expense, during the entire term hereof, keep in full force and effect a policy of public liability, death and property damage insurance with respect to the use and occupancy by Tenant, its agents, servants, licensees, invitees, and all other persons, arising from or out of or in connection with the use and occupancy of the Premises, as well as the use by Tenant, its agents, servants, licensees, invitees and all other persons coming upon and using the stairways, halls, toilet facilities and parking areas in connection with the use and occupancy by Tenant of the leased Premises. The limits under said policy of public liability, death and property damage insurance shall not be less than Three Hundred Thousand Dollars ($300,000.00) per person and Five Hundred Thousand Dollars ($500,000.00) per accident, occurrence or disaster and in which the property damage liability shall not be less than One Hundred Thousand Dollars ($100,000.00).  The policies shall name Owner, any person, firm or corporation designated by Owner, and Tenant as insureds and shall contain a clause that the insurer will not cancel or change the insurance without first giving Owner ten (10) days prior written notice.  If the nature of Tenant's operation is such as to place any or all of its employees under the coverage of local worker's compensation or similar statues, Tenant shall also keep in force, at its sole cost and expense, so long as this Lease remains in effect, insurance affording statutory coverage and containing statutory limits.  The insurance shall be in an insurance company or companies licensed in Delaware and a copy of the policy or a Certificate of Insurance shall be delivered to Owner.  Tenant will indemnify Owner and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in, upon or at the leased

- 6 -

brp - peterfranklin lease 01/28/98

Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agent, contractors, employees and servants.  In case Owner shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Owner harmless and shall pay all cost, expenses and reasonable attorney's fees incurred or paid by Owner in connection with such litigation.  **Tenant also shall pay all costs, expenses and reasonable attorney's fees allowed by law that may be incurred or paid by Owner in enforcing any of the covenants, obligation or agreements in this Lease, suing for damages for any breach thereof, or suing for any relief permitted by Paragraph 15 below.**

(b)  Each of Owner and Tenant hereby releases the other and all persons claiming under it, to the extent of its insurance coverage, from any and all liability for any loss or damage caused by fire or any of the extended coverage casualties, or any other insured casualty, even if such fire or other casualty shall be brought about by the fault or negligence of the other party, or any persons claiming under it, provided, however, this release shall be in force and effect only with respect to loss or damage occurring during such time as releasor's policies of fire and extended coverage insurance shall contain a clause to the effect that this release shall not affect said policies or the right of releasor to recover thereunder.  **Each of Owner and Tenant agrees** that its fire and extended coverage and other insurance policies will include such a clause so long as the same is obtainable and is includable without extra cost, or if extra cost is chargeable therefore, each party will advise the other thereof and the amount thereof, and the other party, at its election, may pay the same but ~~shall~~ not be obligated to do so.

(RATE INCREASES)

12. In the event Tenant's occupancy causes any increase of premium for the fire, boiler and/or casualty rates of the leased Premises, or the buildings of which they are a part, above the rate for the least hazardous type of occupancy legally permitted in the leased Premises, Tenant shall pay (as additional rent), the additional premium on the fire, boiler and/or casualty insurance policies by reason thereof.  Tenant also shall pay in such event, any additional premium on the rent insurance policy that may be carried by Owner for its protection against rent loss through fire.  **Bills for such additional premiums shall be** rendered by Owner to Tenant at such times as Owner may elect, and shall be due from and payable by Tenant when rendered, and the amount thereof shall be deemed to be and shall be paid as additional rent.  Owner shall transmit to Tenant copies of the original invoices for such additional premiums together with a detail of any applicable proration of same.

(TAXES)

13. (a)  Real Estate Taxes upon the Premises for any tax year shall be divided proportionately by tenants based on the amount of space that the tenant occupies.  Tenant shall pay the amount of such tax to Owner, upon demand, as additional rent.  For the tax year during which the term of this Lease shall terminate, Tenant shall pay a pro-rata portion of such tax.

(b)  Tenant shall pay to Owner for each year during the term of the Lease, as additional rent, Tenant's proportionate share (as hereinafter defined) of

brp - peterfranklin lease 01/28/98

Real Estate Taxes imposed in any Tax Lease Year (as hereinafter defined) during the term of this Lease.

(c)  Real Estate Taxes, as used herein, shall mean all taxes, assessments betterment assessments and public charges of every kind and nature whatsoever, general and special, extraordinary and ordinary, foreseen and unforeseen, which may be levied, assessed or imposed either upon the land, building or all improvements located upon the tax parcel of which the Premises are a part.

(d)  Tax Base Year, as used herein, shall mean the initial twelve (12) month period commencing on the first day of July next following the commencement date of this Lease, unless the commencement date of this Lease is the first day of July, in which case the Tax Base Year shall mean the twelve (12) month period commencing on the commencement date; provided, however, that in the event the Building shall not yet have been assessed as fully completed during such period, the Tax Base Year shall refer to the taxing year during which the Building is first assessed as being fully completed.

(e)  Tax Lease Year, as used herein, shall mean the twelve (12) month period immediately following the Tax Base Year and each successive twelve (12) month period thereafter.

(f)  Tenant's Proportionate Share of Real Estate Taxes, as used herein, shall be a fraction, the numerator of which shall be the number of square feet in the Premises and the denominator of which shall be the total square foot area of gross leasable space in the Center.  If any Tax Lease Year shall extend beyond the term of this Lease, then Tenant's Proportionate share of Real Estate Taxes shall be the amount calculated above, multiplied by a fraction, the numerator of which shall be the number of days in the Tax Lease Year during the term of this Lease, and the denominator of which shall be 365.

(g)  Tenant also shall be responsible for and pay as additional rent, its proportionate share of all taxes which may be assessed or imposed by any lawful authority in respect to the occupancy and use by Tenant of the Premises and whether such tax is imposed on the basis of lease value of the Premises leased hereunder or imposed on the base rent.  Without in any way limiting the generality of the foregoing, Tenant shall reimburse Owner on account of the rentals reserved or received under this Lease, including without limitation, any tax imposed upon Owner by reason of 30 Del. C. S2301 (e), as amended from time to time, during the term of this Lease.

(h)  Tenant shall pay all taxes allocable to its signs and other property in or upon the Premises.  Tenant also shall pay taxes allocable to any improvements made by Tenant to the Premises.  For the purpose of this Article, such taxes shall not be included within Real Estate Taxes upon the Entire Premises.

(DEFAULT)

14. (a) In the event that during the term of this Lease (regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity, or before any administrative tribunal, which has prevented or might prevent compliance by Tenant with the terms of this Lease): (i) Tenant shall default in the observance or performance of any of Tenant's covenants, agreements or obligations hereunder, and such default shall not be

brp - peterfranklin lease 01/28/98

cured within ten (10) days after Owner shall have given Tenant written notice
specifying such default(s), or (ii) Tenant shall either abandon the Premises or
allow them to become vacant or deserted or continue in possession after the
expiration of this Agreement without the permission of Owner, or (iii) Tenant
shall be in default for ten (10) days in the payment of rent or any sum herein
specified, or (iv) without further possibility of appeal or review,

(1) Tenant is adjudicated a bankrupt or insolvent, or

(2) **A receiver is appointed for all or substantially** all of Tenant's
business or assets on the grounds of Tenant's insolvency, or

(3) A trustee is appointed for Tenant after a petition has been
filed for Tenant's re-organization under the Bankruptcy Act of the
United States, known as the Chandler Act, or any future law of the
United States having the same general purpose, or

(4) Tenant shall make an assignment for the benefit of its
creditors, or

(5) Tenant is levied upon and is about to be sold out upon the
Premises under execution or other legal process.

(REMEDIES)

Then in and such event, Owner shall have the right, at its election, at any time
thereafter while such default(s) continue, either; (a) to re-enter without an
order by a Court and take complete and peaceable possession of the leased
Premises and any and all improvements then forming part of the leased Premises
and to declare the term of this Lease ended, whereupon this Lease and all the
right, title and interest of Tenant hereunder shall terminate and be of no
further force or effect, or (b) to bring a summary proceeding for possession in
an appropriate Court pursuant to 25 Del. C. Chapter 57, or other applicable law.
In the event of such election, or in addition to this choice, Owner also shall
have the right to sue for and recover all rents and other sums accrued up to the
time of such termination, or owing for any unused portion of the term of the
Lease, **including damages arising out of any breach on the part of Tenant.** Owner
shall also have the right without re-entering the leased Premises or terminating
this Lease, to sue for and recover all rents and other sums, past and future,
including damages at any time and from time to time accruing hereunder. **Tenant**
agrees Owner can bring a civil action for distress for rent or for other money
damages pursuant to 25 Del. C. Chapter 63 or other applicable law. Tenant
agrees Owner has an inchoate lien in the personal property and possessions of
Tenant for rent or other money damages arising from breach of the Agreement.
Both Owner and Tenant agree hereby to waive and do hereby waive trial by jury in
any action, proceeding or counterclaim brought by either of the parties hereto
under or in connection with this Lease.

(b) Tenant hereby authorizes and empowers any attorney of any Court of
record of this state or elsewhere to appear for it in any court on record on
default in the payment of any rent or other money or in the performance of any
covenant, agreement or obligation hereunder and thereupon to waive the issuance
and service of process or other notice, to confess judgement for the principal
sum and any reasonable counsel fees and to release all errors and waive all
right of appeal.

(c) Tenant agrees that if goods, chattels or other personal property of
Tenant being upon the Premises held by him by demise under a rent of money are

- 9 -

brp - peterfranklin lease 01/28/98

seized by virtue of any process of execution, attachment or sequestration, the goods, chattels and personal property shall liable for one (1) year's rent of the Premises in arrears, or growing due, at the time of the seizure, in preference to such process; accordingly, Owner shall be paid such rent, not exceeding one (1) year's rent, out of the proceeds of the sale of such goods, chattels or other personal property before anything shall be applicable to such process.

(d)   If Tenant wrongfully quits or abandons the Premises, it shall be liable for the greater of the following for such abandonment; (i) the entire rent due for the remainder of the term and reasonable renovation expenses, other than for normal wear and tear, incurred in preparing the Premises for a new tenant; (ii) all rent accrued during the period reasonably necessary to re-rent the Premises at a fair rental, plus the difference between such fair rental and the rent agreed to in the prior rental agreement, plus a reasonable commission for the renting of the Premises.

(e)   Owner also retains all other remedies at common law or by statute upon default in the observance or performance of any performance of any of Tenant's covenants, agreements or obligations hereunder.  **Any and all rights and remedies** which Owner may have under this Lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate and cumulative and shall not be deemed inconsistent with each other; and no one of them, whether exercised by Owner or not, shall be deemed to be in exclusion of any other; and no one of them, whether exercised by Owner or not, shall be deemed to be in exclusion of any other; and any two or more of all such rights and remedies may be exercised at the same time.

(f)   Tenant hereby expressly waives any and all right of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event Owner terminates this Lease as provided in this Article.

(g)   Tenant also shall pay all costs, expenses and reasonable attorney's fees allowed by law that may be incurred or paid by Owner in enforcing any of the covenants, obligation or agreements in this Lease, suing for damages for any breach thereof, or suing for any relief permitted by Section 13 hereof.

(WAIVER)

15. Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by the first party of any of its rights hereunder.  No waiver by either party at any time, expressed or implied, of any breach of any provision of this Lease shall be deemed a waiver of a breach of any other provision of this Lease or a consent to any subsequent breach of the same or any other provision.  **If any action by Tenant shall require Owner's consent or approval of** such action on any one occasion shall not be a consent to or approval of any other action on the same or any subsequent occasion.  No payment by Tenant or acceptance by Owner of a lesser amount than shall be due from Tenant to Owner shall be deemed to be anything but payment on account, and the acceptance by Owner of a check for a lesser amount with an endorsement or statement thereupon or upon a letter accompanying said check that said lesser amount is **payment in**

brp - peterfranklin lease 01/28/98

full shall not be deemed an accord and satisfaction, and Owner may accept said
check without prejudice to recover the balance due or pursue any other remedy.

(CONDEMNATION)

16. (a)  If the whole of the building of which the leased Premises are a part
shall be acquired or condemned by eminent domain for any public or quasi-public
use or purpose; then the term of this Lease shall cease and terminate as of the
date and Tenant shall have no claim against Owner or the condemning authority in
respect to any compensation for such taking awarded Owner, whether through a
negotiated settlement or through formal condemnation proceedings.  **If any part**
of the building of which the leased Premises are a part shall be acquired or
condemned as aforesaid and in the event that such partial taking or condemnation
shall render the portion of the building leased hereunder by Tenant unsuitable
for the business of Tenant, then the term of this Lease shall cease and
terminate as of the date title vesting in such proceedings.  Tenant shall have
no claim against Owner or the condemning authority in respect to any
compensation for such taking awarded Owner, whether through a negotiated
settlement or through formal condemnation procedures and proceeding, however, rent
shall be adjusted to the date of such termination.  **In the event of a partial**
taking or condemnation, which is not extensive enough to render that portion of
the building leased hereunder to Tenant unsuitable for the business of Tenant,
Owner shall promptly restore said portion of said building leased hereunder to
its condition as nearly as possible as existed at the time of such condemnation
less the portion lost in the taking and this Lease shall continue in full force
and effect and rent shall be adjusted on the basis of the number of square feet
taken on a pro-rata basis.

     (b)  Owner reserves to itself, and Tenant assigns to Owner, all rights to
damages accruing on account of any taking under the power of eminent domain or
by reason of any act of any public or quasi-public authority for which damages
**are payable.  Tenant agrees to execute such instruments of assignment as may be**
reasonably required by Owner in any proceedings for the recovery of such damage
if requested by Owner and to turn over to Owner any damages that may be
recovered in such proceeding.  It is agreed and understood, however, that Owner
does not reserve to itself, and Tenant does not assign to Owner, any damages
payable for movable trade fixtures installed by Tenant or anyone claiming under
Tenant at its own cost and expense.

(SUBORDINATION)

17. (a)  **This Lease shall be subject and subordinate at all times to the lien of**
any mortgage and/or other encumbrances which may now or hereafter affect such
lease or the Premises, and also to all renewals, modifications, consolidations
and replacements of said mortgages or other encumbrances, without the necessity
of any further instrument or act on the part of Tenant to effectuate such
subordination.  Tenant agrees, at the election of the mortgage, to attorn to any
holder of the mortgage to which this Lease is subordinate.  **Although no**
instrument or act on the part of Tenant shall be necessary to effectuate the
foregoing subordination and attornment, Tenant shall, nevertheless, execute and
deliver such further instrument or instruments confirming such subordination of
this Lease to the lien of any such mortgage and/or other encumbrances as shall
be desired by any mortgagee or proposed mortgagee or by any other person.
Tenant hereby appoints Owner the attorney-in-fact of Tenant irrevocably (such

- 11 -

brp - peterfranklin lease 01/28/98

power of attorney being coupled with an interest) to execute and deliver any such instrument or instruments for and in the name of Tenant.

(b)  In the event that any prospective holder of any mortgage, as hereinbefore defined, shall request any modification of any of the provisions of this Lease not substantially affecting Tenant's rights, other than a provision directly related to the rents payable hereunder, the duration of the term hereof, or the size, use or location of the Premises, Tenant agrees that Tenant will enter into a written agreement in recordable form with holder or prospective holder, which shall effect such modification and provide that such modification shall become effective and binding upon Tenant and shall have the same force as an amendment to this Lease in the event of foreclosure or other similar action taken by such holder or prospective holder.

(NOTICE)

18. Any notice provided for herein shall be given by registered or certified mail, postage pre-paid, addressed, if to Owner at P.O. Box 4187, Greenville, DE 19807 and if to Tenant at 1119 Webster Drive, Wilmington, DE 19803.

(HOLDING OVER)

19. (a)  It is agreed that this Lease shall terminate without notice by either party, upon the expiration of the period specified in Paragraph 1 hereof.  Any holding over after the expiration of the period hereof, without the written consent of Owner shall be construed to be a tenancy from month to month at two (2) times the monthly rent hereinafter specified, and shall otherwise be on the terms and conditions hereinbefore specified.  Such tenancy from month to month shall continue until either party shall give at least sixty (60) days notice in writing to the other terminating such tenancy.  Tenant agrees to be responsible for any loss or damage to Owner, foreseeable or unforeseeable, known or unknown, resulting from any holdover by Tenant after said sixty (60) day notice terminating such tenancy.

(RELETTING)

(b)  Owner shall have the right to display a "For Sale" sign at any time, and also, after notice by either party of intention to terminate this Lease, or at any time within three (3) months prior to the expiration of this Lease, for a "For Rent" sign, or both "For Rent" and "For Sale" signs; and all of said signs may be placed upon such part of the Premises and/or Building as Owner may elect and may contain such matter as Owner shall require.  Prospective purchases or tenants authorized by Owner may inspect the Premises at reasonable hours, at any time.

(TRANSFER)

20. (a)  Tenant agrees at any time and from time to time, within five (5) days after Owner's written request, to execute, acknowledge and deliver to Owner a written instrument in recordable form certifying that this Lease in unmodified and in full force and effect (or if there has been modification, that it is in full force and effect as modified and stating the modifications), and the dates to which minimum rent, additional rent and other charges have been paid in advance, if any, and stating whether or not to the best knowledge of the signed

- 12 -

brp - peterfranklin lease 01/28/98

of such certificate Owner in default in the performance of any covenants, agreements, or conditions contained in this Lease and if so specifying each such default of which signer may have knowledge, it being intended that any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser of the fee or any mortgagee thereof or any assignee of Owner's interest in this Lease or of any mortgage upon the fee of the Premises, or any part thereof.

(b)  In the event of any transfer of Owner's interest in this Lease, the transferor shall cease to be liable and shall be released from all liability for the performance or observance of any agreements or conditions on the part of Owner to be performed or observed subsequent to the time of said transfer, it being understood and agreed that before and after said transfer the transferee shall be liable for the performance and observance of said agreements and conditions.

(LAW)

21. This Lease shall be governed and construed under the laws of the State of Delaware.

(FULL AGREEMENT)

22. This Lease and any Riders attached hereto, if any, are intended by the parties as a final expression of their agreement, and as a complete and exclusive statement of the terms hereof, all negotiations, considerations and representations between the parties having been incorporated herein.  No course of prior dealings between the parties or their officers, employees, agents or affiliates shall be relevant or admissible to explain or vary any of the terms of this Lease.  Acceptance of, or acquiescence in, a course of performance rendered under this or any prior agreement between the parties or their affiliates shall not be relevant or admissible to determine the meaning of any of the terms of this Lease.  No representations, undertakings or agreements have been made or relied upon in the making of this Lease other than those specifically set forth herein.  This Lease can be modified by a writing executed by the party sought to be bound.

(RIDERS)

23. One (1) Rider(s) containing Sections numbered 1 through 4 is attached hereto and made a part hereof.

(RULES)

24. EXHIBIT A attached hereto, captioned "Rules and Regulations of the Building", is made part hereof and any default by Tenant of any of the provisions thereof, or of any others further reasonable rules and regulations as Owner may adopt from time to time, shall be considered to be a default under the terms of this Lease.

(PRE-TERM OCCUPANCY)

25. If Tenant shall accept possession of the Premises prior to the commencement of the term, Tenant shall be subject to all the provisions of this Leases during

brp - peterfranklin lease 01/28/98

the period between the acceptance of said possession and the commencement of the term of this Lease as if said period were part of the term of this Lease, except that no rent shall be payable for said period. Notwithstanding anything herein contained to the contrary, if Tenant shall open for business within the Premises prior to the commencement of the term, then the term of this Lease shall commence on the day on which Tenant shall so open for business. Tenant may accept possession of the Premises as per above only if Tenant's insurance coverage is in effect with regard to the Premises.

(RECORDING)

26. Tenant shall not record this Lease, and any recording of this Lease by Tenant shall constitute a material breach by Tenant and shall entitle Owner, at its election, to immediately terminate this Lease.

(MISCELLANEOUS)

27. (a)  The submission of this Lease for examination does not constitute a reservation of or option for the leased Premises and this Lease becomes effective as a Lease only upon execution thereof by Owner and Tenant.  If this Lease is not executed by both parties and fully executed copies thereof delivered to both parties by February   , 1998 then this Lease shall be null and void.

(b)  As used herein, the neuter gender shall be construed as feminine or masculine gender, as the case may be.

(c)  This Agreement shall bind and benefit all the parties hereto and their respective Executors, Administrators, Heirs, Successors and Assigns and shall be assignable by Owner.

(d)  Wherever in this Lease provision is made for the doing of anything by any person it is understood and agreed that said act shall be done by such person at its own cost and expense unless a contrary intent is expressed.

(AGENCY, BROKER'S FEE)

28. Commerce Realty Corporation represents Owner's interest and has fiduciary responsibilities to Owner, but is obligated to treat all parties fairly. Commerce Realty Corporation, without breaching its responsibilities to Owner, may, among other services, provide potential tenants with information about the attributes of properties and information pertinent to the transaction and has the duties to respond accurately and fairly to a potential tenant's questions, to disclose material facts, to submit promptly all offers and to offer all properties without lawful discrimination.

Commerce Realty Corporation is entitled to a leasing commission from Owner under a separate agreement.

brp - peterfranklin lease 01/28/98

    IN WITNESS WHEREOF, the parties have caused this Lease to be executed on the date first above written.

Witness

OWNER:  BASIN ROAD PLAZA ASSOCIATES

BY: _____ (SEAL)

TENANT: PETER FRANKLIN, INC.

BY: _____
      President

ATTEST: _____ V. Pres.

(CORPORATE SEAL)

PETER FRANKLIN INC

brp - peterfranklin lease 01/28/98

## SECURITY DEPOSIT AGREEMENT

On this 14th day of February , 1998, Peter Franklin, Inc. (Tenant) has deposited with **Basin Road Plaza Associates** (Owner) One Thousand Dollars ($1,000.00) as security for the full and faithful performance of each and every item, provision, covenant and condition of this Lease dated the 14th day of February, 1998 for the Premises at 509 Basin Road Plaza, New Castle, DE. In the event Tenant defaults in respect of any of the terms, provisions, covenants or conditions of this Lease, including but not limited to the payment of rent, Owner in its sole discretion may use, apply or retain the whole or any part of such security for the payment of any rent in default or for any other sum which Owner may spend or be required to spend by reason of Tenant's default. Notice of Owner's decision will be given to Tenant within thirty (30) days of Tenant's default.  Should Tenant faithfully and fully comply with all of the terms, provisions, covenants and conditions of this Lease, the security or any balance thereof shall be returned to Tenant or, at the option of Owner, to the last assignee of Tenant's interest in this Lease at the expiration of the term hereof.  Tenant shall not be entitled to any interest on said security deposit or any penalty for any delayed refund of the deposit.

It is understood and agreed that Owner shall always have the right to apply said sum, or any part thereof, as aforesaid in the event of any such default or defaults, without prejudice to any other remedy or remedies which Owner may have, or Owner may pursue any other such remedy or remedies in lieu of applying said sum or any part thereof.  **If Owner shall apply said sum or any part thereof** as aforesaid, Tenant shall, upon demand, pay to Owner the amount so applied by Owner to restore the security to its original amount.  **Whenever the holder of** Owner's interest in this Lease, whether it be the Owner named in this Lease or any transferee of said Owner, immediate or remote, shall transfer its interest in this Lease, said holder shall turn over to its transferee said sum or the unapplied balance thereof, and thereafter such holder shall be released from any and all liability to Tenant with respect to said sum or its application or return, it being understood that Tenant shall thereafter look only to such transferee with respect to said sum, its application and return.

Unless Owner's name is subscribed by its officers or authorized agent immediately following this paragraph, it is understood and agreed that no deposit has been made and that the foregoing provisions are null and void.

Witness

OWNER:  BASIN ROAD PLAZA ASSOCIATES

BY:  _____ (SEAL)

TENANT:  PETER FRANKLIN, INC.

BY:  _____
          President

ATTEST:  _____

(CORPORATE SEAL)

- 16 -

brp - peterfranklin lease 01/28/98

## RIDER NUMBER ONE

This Rider is attached to and made a part of this Lease dated the 14th day of *Fibruary* , 1998, between BASIN ROAD PLAZA ASSOCIATES, OWNER, and PETER FRANKLIN, INC., TENANT.

The parties expressly agree that the said Agreement is expressly modified or supplemented in the following respects:

Section 1 (a):  Maintenance, Repair And Replacement By Tenant

With respect to the Premises, Tenant shall at all times maintain and shall repair or replace with like kind and quality when necessary exterior entrances, all glass (including show windows), moldings, partitions, doors, fixtures, equipment and appurtenances, electrical fixtures and equipment, plumbing, heating, ventilating and air conditioning equipment (except for replacements of such equipment, if necessary), periodic painting as may be required, and all other items not specifically listed as Owner's responsibility under the Lease. Tenant shall enter into a maintenance contract with a responsible and capable service company acceptable to Owner to maintain the heating, ventilating and air conditioning equipment.  **Tenant agrees to keep drain lines clear up to the point where the line joins drain lines serving others**, at Tenant's expense, and to reimburse Owner for any expense incurred by Owner in removing drain obstructions if the obstruction entered the drain system from the Tenant's Premises.

It is the duty of Tenant to keep the Premises free of insects, rodents, and pests.  Tenant shall as needed obtain the services of an exterminator licensed by the State of Delaware for inspection and extermination of insects, rodents, and other pests whenever such pests are noticed.

Section 1 (b):  Tenant's Failure To Repair

If Tenant refuses or neglects to repair properly the Premises as required in this Lease, in a reasonable time after written demand by the Owner, the Owner may make such repairs without liability to Tenant for any loss or damage that may accrue to Tenant's merchandise, fixtures and/or other property, or to the loss of business occasioned by reason thereof; and further, upon completion of such repairs, Tenant shall pay Owner's costs occasioned by such repairs plus twenty percent (20%) for overhead upon presentation of the bill for the costs so incurred.  It is further agreed and understood said billing of costs shall constitute additional rent and shall include interest at twelve percent (12%) per annum from the date the costs were incurred by Owner.

Section 2:  Mechanic's Lien

Tenant agrees not to suffer any mechanic's lien to be filed against the Premises or any other portion of the Shopping Center by reason of any work, labor, services or materials performed at or furnished to the Premises for Tenant, or for anyone holding the Premises through or under Tenant.  If any such mechanic's lien shall at any time be filed, Tenant shall forthwith cause the same to be discharged of record by payment, bond, order of a court of competent jurisdiction, or otherwise, but Tenant shall have the right to contest any and all such liens, provided security satisfactory to Owner is deposited with it.

brp - peterfranklin lease 01/28/98

If Tenant shall fail to cause such lien to be discharged within thirty (30) days after being notified of the filing thereof and before judgment or sale thereunder, then, in addition to any other right or remedy of Owner, Owner may, but shall not be obligated to, discharge the same by paying the amount claimed to be due or by bonding or other proceeding deemed appropriate by Owner, and the amount so paid by Owner and/or all costs and expenses, including reasonable attorney's fees and court costs, incurred by Owner in procuring the discharge of such lien, shall be deemed to be additional rent and, together with interest thereon shall be due and payable by Tenant to Owner on demand. Nothing in this Lease contained shall be construed as a consent on the part of Owner to subject Owner's estate in the Premises to any lien or liability under the mechanic's lien law unless Tenant shall provide Owner acceptable security prior to commencement of work.

Section 3: CAM, Taxes and Insurance

CAM is included in Rent. Property taxes and insurance will be prorated equitably and invoiced annually by Owner to Tenant.

Section 4: Signs

No sign may be erected on the exterior of the Premises, or within the Premises if such sign will be visible from outside the Premises, without the prior written consent of Owner. Owner's consent may be withheld if in Owner's sole judgment such sign does not contribute to an orderly, neat and tasteful appearance of the Shopping Center. Tenant shall submit sign designs to Owner for each sign Tenant desires to erect on the Premises, together with proposed signage text for each sign including lettering style and size, all colors and materials and illumination values, if applicable. Tenant shall not use any advertising or other media objectionable to tenants and/or local codes governing the same, such as loudspeakers, phonographs, or radio broadcasts that can be heard outside the Premises. Tenant shall have the right to install its own sign face in the "box sign" currently on the roof above the Premises. Tenant shall have the right to place a sign panel on each side of the pylon sign for the shopping center.

Owner reserves the right at any time or times during the term of this Lease to use the roof, foundation or exterior walls other than parts of the store front for signs or in connection with additional construction.

Signature Page follows.

brp - peterfranklin lease 01/28/98

    Except as the same may be inconsistent with the terms of this Rider, all of the conditions of the Lease shall remain in full force and effect in accordance with their terms.

OWNER:   BASIN ROAD PLAZA ASSOCIATES

BY: _____ (SEAL)

TENANT: PETER FRANKLIN, INC.

BY: _____

           President

ATTEST: _____

_____
Witness

(Corporate Seal)

- 19 -

1403 SILVERSIDE ROAD
WILMINGTON, DE   19810
(302) 475-6200

June 3,  2000


Basin Road Plaza Associates
P.O. Box 4187
Greenville, DE 19807

Dear Dr. Sorouri:

   I hereby request your consent for Peter Franklin, Inc. to
occupy our premise as a Laundromat and Dry Cleaning operation.
We can no longer operate as a Dry Cleaning drop off store and
find it necessary to do Dry Cleaning on the premise. All applicable
laws, ordinances and regulations will be followed with respect
to use of the operation.

   Mr. Osborne from Commerce Realty has been contacted and he
is in agreement with our request.

   Should you have any question, please call me at 302-475-6200.

   Please be kind enough to approve our request by signing the
bottom of this letter.

   Thank you for your cooperation.


Sincerely,

VARONE INSURANCE
FINANCIAL SERVICES
1403 SILVERSIDE ROAD
WILMINGTON, DE   19810
(302) 475-6200

August 6,  2002


Basin Road Plaza Assoc.
P.O. Box 4187
Greenville, DE 19807


Dear Dr. Sorouri:

Re:  Basin Plaza Laundry
Peter Franklin Inc./ Franklin Thomas LLC


It is our desire to exercise our lease option to renew the lease for three (3) additional terms of five (5) years as indicated in our lease agreement dated February 14, 1998 under paragraph #1(b).

Should you have any question, please do not hesitate to contact me.

Sincerely,


VARONE INSURANCE

# ASSIGNMENT OF LEASE

THIS AGREEMENT, made this ___ day of October 2002 by and between **Abessinio Property Management**, as Landlord, **Peter Franklin, Inc.**, as Assignor and **JFS Holdings, Inc.,** as Assignee, is for the assignment of the Lease dated February 14th 1998 for approximately 2,000 square feet of commercial space located within Unit #509 of the shopping center known as Basin Road Plaza with a mailing address of 509 Basin Road, Basin Road Plaza, New Castle, DE 19720 (the "Demised Premises").

**W I T N E S S E T H:**

**WHEREAS**, on February 14, 1998 Basin Road Plaza Associates (hereinafter the, "Previous Landlord") and Assignor executed a lease for the Demised Premises together with a Security Deposit Agreement and Lease Rider Number One (hereinafter collectively referred to as the, "Lease"). A copy of the Lease is attached hereto as Exhibit, "A"; and

**WHEREAS**, on August 6, 2002 Assignor exercised its option to renew the Lease for three (3) additional five (5) year terms (commencing March 1, 2003 and ending on February 28, 2018) in accordance with paragraph 1(b) of the Lease. A copy of Assignor's letter exercising these options is attached hereto as Exhibit, "B"; and

**WHEREAS**, in August of 2002, Landlord purchased the Demised Premises from the Previous Landlord and has assumed the Lease; and

**WHEREAS**, the Assignor has requested and the Landlord has agreed to the assignment of the Lease to the Assignee on the following terms and conditions.

**NOW THEREFORE**, in consideration of the following covenants and conditions and the sum of one dollar ($1) in hand paid, the Landlord, Assignor and Assignee, intending to be legally bound hereby, agree as follows:

1.      Effective, November 1, 2002, Landlord does hereby consent to the assignment of the Lease (which Landlord acknowledges has been properly extended through February 28, 2018) to the Assignee. In turn, the Assignee does hereby agree to be legally bound and adhere to all of the terms and conditions contained within the Lease.

2.      Landlord shall invoice Assignee for all taxes, insurance and sewer charges attributable to Assignee under the Lease on the first business day of each calendar quarter.

3.      Assignee agrees to pay all taxes and insurance charges attributable to Assignor for each calendar quarter within five (5) days of receipt of each quarterly invoice. In addition, Assignee shall pay one-third of the sewer charges attributable to Assignee by the first day of the month of each respective quarter.

4.      Upon the execution of this Agreement, Landlord shall return to Assignor the $1,000.00 security deposit that Assignor had provided to the Previous Landlord under the Lease. Assignee shall deposit with the Landlord the sum of $1,000.00 to secure its faithful performance under the Lease as follows:

>      $500.00..................Due November 1, 2002
>      $500.00..................Due December 1, 2002

5.      Upon the execution of this Agreement, Landlord does hereby release Assignor from any further obligations or liability arising under the Lease.

6.      Landlord and Assignee do hereby agree that except as modified herein, the Lease shall remain in full force and effect.

7.     This Agreement is binding upon the parties hereto, their heirs, successors, legal representatives and assigns.

8.     This Agreement represents the entire agreement between the parties hereto with respect to the subject matter hereof and shall not be modified except by a writing signed by all of the parties hereto.

9.     This Agreement shall be construed in all respects, in accordance with the laws of the State of Delaware.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed this _____ day of October 2002.

JFS Holdings, Inc.                              Peter Franklin, Inc.

By:_____                    By:_____

Abessinio Property Management

By:_____