# ASSET PURCHASE AGREEMENT

THIS AGREEMENT, made this 1st day of ~~July~~ August 2005 by and between **JFS Holdings, Inc**, a Pennsylvania corporation licensed to do business in the state of Delaware (hereinafter, "Seller");

AND

**Summer State, LLC**, a limited liability company operating within the laws of the State of Delaware (hereinafter referred to as, "Purchaser").

W I T N E S S E T H:

WHEREAS, the Seller is the owner of a business located at 509 Basin Road, Basin Road Plaza, New Castle, DE 19720 which operates a coin-operated Laundromat, ~~"wash and fold" and~~ dry-cleaning drop-off operation ~~(hereinafter referred~~ to as the "Business"); and

WHEREAS, the Seller is desirous of selling and the Purchaser is desirous of purchasing the Business; and

WHEREAS, the Seller and Purchaser now seek to perpetuate in writing their present understanding and agreement.

NOW THEREFORE, in consideration of the following covenants and conditions, the Seller and Purchaser, intending to be legally bound hereby, agree as follows:

1. **Purchase and Sale of Personalty**. The Purchaser agrees to purchase from the Seller the Business, together with all of its equipment, fixtures, furniture and other tangible personal property including but not limited to all items set forth in Exhibit, "A" attached hereto and made a part hereof.

1

Exhibit

2. **Payment of Purchase Price**. The Purchaser agrees to pay for the Business the total sum of one-hundred and forty thousand ($140,000.00) dollars payable as follows:

(1) Upon the execution of this Agreement, Purchaser shall present to Seller's broker a deposit in the amount of fourteen thousand ($14,000.00) dollars. Said deposit is refundable to Purchaser in full in the event it does not proceed to settlement;

(2) At Settlement, Purchaser shall provide Seller with a certified check in the amount of one hundred twenty-six thousand ($126,000.00) dollars;

3. **Sale of Inventory**. It is expressly understood that the purchase price includes all inventory and stock of the Business as set forth within Exhibit, "A" attached hereto and made a part hereof. All such inventory shall be free and clear of any and all liens and encumbrances.

4. **Bill of Sale**. At settlement, Seller shall execute and deliver to Purchaser a Bill of Sale for all furniture, fixtures, equipment and other items of tangible personal property. In addition, Seller shall deliver to the Purchaser all leases, contracts, agreements, commitments and rights pertaining to the Business.

5. **Settlement.** Settlement shall occur on or before September 1, 2005 at a mutually agreeable location. At the time of settlement, possession of the Business shall be given to the Purchaser and Seller shall turnover all keys (including all originals and duplicates) pertaining to the Business.

6. **Payment of Taxes and Obligations**.

a. The Seller covenants that all taxes, assessments and unemployment compensation contributions due in connection with the operation of the Business to any

city, county, state, federal or governmental agencies shall be paid in full up to the date of settlement, that all due returns, forms and taxes required to be filed with said agencies have been properly filed and paid as of the settlement date, or will be so filed and paid in due course thereafter.

      b.    Except with regard to the covenants of the lease for the Business premises, the Purchaser shall not assume and will not discharge or be liable for any debts, liabilities or obligations of Seller, including without limitation, any (i) liabilities or obligations of the Seller to its creditors; (ii) liabilities or obligations of the Seller with respect to any transactions occurring after settlement; (iii) sales or income taxes or other liabilities or obligations of the Seller incurred in connection with the sale of its properties, assets or Business pursuant to this Agreement or in connection with its liquidation or dissolution, if any, or (iv) any contingent liabilities or obligation of the Seller.

7. **Creditors**. As a condition of this Agreement, Seller agrees to deliver an affidavit to Purchaser at settlement acknowledging that Seller has no creditors with respect to the Business as of the date of settlement.

8. **Representations and Warranties**. The Seller hereby represents and warrants to the Purchaser that as of the date of the execution of this Agreement, the following representations are true and correct and shall survive settlement:

      a.    Seller is the owner and has good and marketable title to all equipment, fixtures and other assets being sold hereunder as set forth in Exhibits, "A." The Seller further warrants and represents that as of the time of settlement, all assets being conveyed shall be free and clear of all debts, encumbrances, liens, mortgages,

claims or demands whatsoever and that the Seller has the right and authority to assign any and all leases and contracts being purchased by Purchaser hereunder.

  b. That the Seller, at the time of settlement, will have no judgments, liens, actions or proceedings against it and no claims of any nature whatsoever for which the Purchaser might be subject to liability.

  c. That there are no violations or actions pending or arising from noncompliance or wrongful compliance with any regulation or requirement of any governmental agencies, whether federal, state or local. Seller represents that there are no current violations or pending actions of any governmental agency with respect to the Business.

  d. That all equipment transferred hereunder shall be in good working order and condition at the time of settlement.

9. **<u>Indemnification</u>**. Seller shall indemnify, save harmless and defend Purchaser, at all times after the date of this Agreement from and against:

  a. Any damage or deficiency resulting from any misrepresentation, breach of warranty or representation or non-fulfillment of any agreement or covenant made by or on the part of the Seller under this Agreement.

  b. Any and all transferor liability imposed upon the Purchaser by reason of any federal, state or local tax liability of Seller or otherwise.

10. **<u>No Other Representations</u>**. Except as set forth herein, Seller makes no other warranties or representations as to the Business or items sold and Purchaser acknowledges that other than the representations contained within paragraph eight (8) above, it is buying the assets "AS IS".

11. **Covenant Not to Compete**. For a period of three (3) years after settlement, Seller, its officers and shareholders will not directly or indirectly own or manage in any manner, any business within five (5) miles of the Business, that shall be in competition with the business of the Seller presently being conducted and which Purchaser is purchasing hereunder.

12. **Name and Signage**. Seller acknowledges that the names "Basin Plaza Laundry" as well as any existing signs and logos located at the Business premises are included in the sale price paid by Purchaser for the Business.

13. **Contingencies**. Seller and Purchaser's obligation to proceed to settlement hereunder is contingent upon the following:

   a. The Seller's assignment of the real estate lease for the Business to Purchaser without any modifications in the terms of the lease whatsoever;

   b. The Seller providing to Purchaser within five (5) days of Purchaser executing this Agreement and providing the necessary deposit, a copy of the lease along with copies of the CAM charges, water, electric/gas, telephone and security bills for the last twelve (12) months. Purchaser shall have up to one week prior to settlement to review these records and if so desired, decline to go to settlement;

   c. The Purchaser performing (within a reasonable time prior to settlement) a physical inspection of the Business and receiving a satisfactory report from its agents regarding its condition.

14. **Broker's Commission.** Purchaser and Seller acknowledge that no broker other than the Ellsher Group, Inc., has been involved in this transaction and as such no

commissions of any kind whatsoever are due to any other parties at Settlement other than the Ellsher Group, Inc.

15. **Miscellaneous**.

    a.    Seller acknowledges that prior to closing, it shall turn over all names, addresses and telephone numbers, for all vendors and shall provide all customer lists, if any, which relate to the Business.

    b.    Seller acknowledges that Purchaser is under no obligation to retain any of the employees of the Business.

    c.    This Agreement is binding upon the parties hereto, their heirs, successors, legal representatives and assigns.

    d.    This Agreement represents the entire agreement between the parties hereto with respect to the subject matter hereof and shall not be modified except by a writing signed by all of the parties hereto.

    e.    This Agreement shall be construed in all respects, in accordance with the laws of the State of Delaware.

    f.    The provisions of this Agreement shall survive Settlement.

    g.    Any signs, web sites, etc., advertising the sale of the Business shall immediately be removed upon the execution of this Agreement.

    h.    Purchaser shall have the right of access to the Business as well as reasonable access to the books and records of the Seller after the execution of this Agreement. The Purchaser and Seller agree to conduct a pre-settlement inspection and a pre-settlement inventory approximately one (1) day prior to settlement.

    i.    Pending settlement, Seller shall continue to operate the Business in

its ordinary course.

j.  Seller acknowledges that its agent shall provide the Purchaser with adequate training for a period of up to two (2) weeks.

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed this 1st day of ~~July~~ August 2005.

JFS Holdings, Inc.                    Summer State, LLC.

By: _____                       By: _Roseann Sestito_

# **EXHIBIT A**

Fixtures, Equipment & Chattel Included in Sale:

- A. Two (2) Standard Coin Change Machines
- B. One (1) weight scale approved by the State of Delaware
- C. A O Smith Hot Water System & one (1) Forced Hot Air Ceiling Unit
- D. One (1) 30lb. Stacked Speed Queen Dryer (Model 30STDG)
- E. Four (4) 35lb. Single Wasco Dryers & two (2) 50lb. Single Wasco Dryers
- F. Eight (8) 35lb. Stacked Wasco Dryers
- G. Seven (7) Sears Kenmore Heavy Duty Top Load Washers
- H. Five (5) Wasco WE-16 Washers
- I. Eight (8) Wasco W-125 ES Triple Load Washers – Emerald Series
- J. Two (2) Wasco W-185E Giant Loader Washers – Emerald Series
- K. One (1) Klopp Coin Counter & Coin Wrap Crimper
- L. One (1) Avanti Refrigerator, One (1) GE Microwave, One (1) Sanyo Vacuum
- M. One (1) Eight-Column Soap Machine
- N. Two (2) color TVs (Emerson & Samsung)
- O. Four (4) Folding Tables, Six (6) Laundry Carts and Three (3) Ceiling Fans and Assorted Plastic Seating
- P. All wash/fold soap, bleach, etc.)
- Q. One ADT Security System (not in use by the Seller and will need to be reactivated by ADT prior to use)